UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| SHERRI STEPHENS | CIVIL ACTION NO: 3:10-CV-1102 |
| VERSUS | JUDGE WALTER |
| CITY OF BASTROP | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. #14] filed on behalf of Defendant, City of Bastrop, pursuant to Federal Rule of Civil Procedure 56. Plaintiff, Sherri Stephens ("Stephens"), opposes the motion [Doc. #16]. For the reasons assigned herein, the Motion for Summary Judgment is **GRANTED**.

## SUMMARY OF UNCONTESTED FACTS

Plaintiff Sherri Stephens ["Stephens"] filed a complaint against her former employer, the City of Bastrop ["the City"], alleging unlawful gender discrimination and/or harassment, during her time with the Bastrop Police Department, in violation of Title VII of the Civil Rights Act of 1964.

Stephens began her career with the Bastrop Police Department as a dispatcher in 1999, became a patrolman in December 2006, and finally a detective in November 2009.[1] Stephens' employment-related problems began with Jessie Walker's appointment as Interim Chief, after Chief of Police Alan Freeman retired in January 2008.[2] During Walker's time as Interim Chief, Stephens alleges that she witnessed numerous instances of his negative attitude towards, treatment of, and

---

[1] [Doc. #14-1, p. 8, 16].

[2] [Doc. #14-1, p. 18, lines 21-22; p. 19, lines 17-21; p. 20, lines 9-11].

1

statements regarding women, including reference to the department's increase in female employees as a "very bad thing."[3]

Stephens contends she was verbally abused by Interim Chief Walker on July 31, 2008.[4] The two to three minute "tirade" occurred just before Stephens was to appear for a mandatory disciplinary hearing and was in the presence of three male officers, two of whom were members of that disciplinary panel. Believing her gender to be the unstated reason for Interim Chief Walker's verbal attack, Stephens filed a written grievance with Mayor Hawkins on August 11, 2008[5] and her first EEOC complaint on August 12, 2008.[6] In her letter to Mayor Hawkins, Stephens specifically describes being "completely mortified and embarrassed to be yelled at in this manner in the presence of [her] co-workers."[7] She further relates that Walker also yelled at Sgt. Anthony Evans, who was a member of the disciplinary panel and who tried three times to defend Stephens against Walker. Additionally, in her August 12th EEOC complaint, in response to the question "[w]ho else has been harassed/discriminated by [Interim Chief Walker]?," Stephens listed four male employees and one female employee.[8] After filing this grievance, Stephens had no further direct confrontations with Interim Chief Walker but alleges that his silence and/or shunning continued to be a problem.[9]

---

[3] [Doc. #1, Complaint for Damages, ¶ 11].

[4] [Doc. #14-1, p. 26, lines 3-7].

[5] [Doc. #14-8].

[6] [Doc. #14-7].

[7] [Doc. #14-8, p. 2].

[8] [Doc. #14-7, p. 2].

[9] [Doc. #14-1, p. 50, lines 1-6; and Doc. #16-1, Plaintiff's Statement of Material Facts, ¶ 10].

Walker's tenure as Interim Chief ended in late 2008 or early 2009.[10]

However, as a result of filing her first grievance, Stephens claims that there was a significant increase in the gender discrimination and harassment.[11] Stephens contends that various members of the police force referred to her as a "marked woman," meaning that she would never be promoted from her station as a patrol officer after filing such a grievance.[12] On one occasion, Stephens contends that her pay was wrongfully suspended when Interim Chief Walker accused her of a sick leave violation, for which she claims she was innocent. Through an informal process, she "appealed" the suspension, but it was upheld on the basis of Sgt. Anthony Evans positively identifying Stephens at a shopping mall on the day in question (October 5, 2008).[13]

Captain Sherman Burrell is alleged to be the predominant source of retaliatory acts after Stephens filed her initial complaint with the EEOC.[14] Stephens complains of specific instances of Capt. Burrell harassing her while she was on patrol and the Captain's repeated failure to appear for complaints, even when scheduled as Stephens' back-up. She believes all of Capt. Burrell's actions were acts of retaliation for filing her first EEOC complaint for discrimination, which ultimately led

---

[10] [Doc. #14-1, pp. 19-20]. (Stephens stated in her deposition that she "didn't have a problem in the world after Jesse [sic] retired... It was just while Jesse was there and in charge." [Doc. #14-1, p. 67, lines 5-7]).

[11] [Doc. #1, ¶ 6].

[12] [Doc. #1, ¶ 13].

[13] At the hearing, Stephens responded to the allegations by saying, "I cannot confirm or deny that I was at the mall that day. That was two and a half months ago. I don't remember...". [Doc. #14-2].

[14] Stephens was assigned to Capt. Burrell's shift beginning in February 2007, on the "300 shift." [Doc. #14-1, p. 16, lines 24-25; p. 50, lines 7-20].

to a second EEOC complaint being filed for retaliation.[15] Capt. Burrell, like Interim Chief Walker, has also retired.[16]

Additionally, Stephens contends that there was general, disparate treatment of females throughout the Bastrop Police Department. This included common reference to the "gender shift," a derogatory phrase created by male officers to describe patrol units manned by two female officers. Prior to the installation of this shift, Stephens claims that supervising officers obtained consent from any affected male officers, to ensure they were comfortable having female officers as their backup.[17] Stephens found this to be offensive gender discrimination, as she had never before been asked whether she was comfortable having particular male officers as her backup. Stephens also claims that she was denied voluntary overtime and experienced a marked difference in her paychecks after filing her grievance.[18] However, Stephens' payroll records indicate a rise in each of the sequential years' income levels in 2007, 2008, and 2009.[19]

Upon her own request, Stephens was granted a lateral transfer to the position of detective in November 2009. She remained a detective until she left the police force entirely, in November 2010.[20] In her deposition, Stephens stated that she quit because she "was tired of working there."

---

[15] The Court has not been provided with a copy of the second EEOC complaint, filed on October 21, 2008 for retaliation.

[16] According to Stephens, Burrell retired "a couple of months before [Stephens] quit." [Doc. #14-1, p. 51, lines 7-8].

[17] [Doc. #1, ¶¶ 9-10].

[18] [Doc. #14-1, p. 78, lines 13-17; p. 79, lines 2-8].

[19] [Doc. # 14-3].

[20] [Doc. #14-1, p. 17, lines 7-12].

She explained that she "enjoyed [her] job for the most part, but... it just wasn't the same the last couple of years" and that her reasons for quitting were connected to her lawsuit "for the most part."[21]

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.""[22] A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325;

---

[21] [Doc. #14-1, p. 5, lines 23-25; p. 6, lines 1-2, 17]. (Stephens stated that she "didn't have any problems" during her "last year," working as a detective for the Bastrop Police Department. [Doc. #14-1, p. 68, lines 11-17]).

[22] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

*Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

### DISCUSSION

Stephens has sued City of Bastrop on claims of gender discrimination and retaliation under Title VII. Both Supreme Court and Fifth Circuit precedent make it clear that there are two different standards for what qualifies as an "adverse employment action," required to establish a prima facie case under each of the two theories of recovery. For the reasons set forth more fully below, Stephens has failed to allege sufficient facts to prove an "adverse employment action" under either of the two standards.

6

## Gender Discrimination

Stephens alleges that the City of Bastrop subjected her to unlawful gender discrimination and harassment, beginning in January of 2008, while she was employed with the Bastrop Police Department. Title VII gender discrimination claims are analyzed under a three-part burden-shifting scheme.

Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a). A plaintiff may prove employment discrimination through direct or circumstantial evidence. *See Laxton v. Gap Inc.*, 333 F.3d 573, 578 (5th Cir. 2003). As there is no direct evidence of discrimination in this case, Stephens' claims are evaluated using the evidentiary framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, Stephens must first establish a *prima facie* case of discrimination by a preponderance of the evidence by showing the following: (1) that she is a member of a protected class; (2) that she was qualified for the position at issue; (3) that she suffered an adverse employment action; and (4) that she was treated less favorably than similarly situated employees outside of the protected class. *See Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003) (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)).

If the plaintiff can present a prima facie case, the burden then shifts to the defendant-employer to rebut the plaintiff's case by demonstrating a "legitimate, nondiscriminatory justification for its actions." *Manning*, 332 F.3d at 881. If the defendant offers such a justification, the burden then shifts back to the plaintiff, who can attempt to show that the defendant's proffered reason is simply a pretext for discrimination. *Id.* As shown below,

Stephens has failed to present a prima facie case; therefore, the Court need go no further in its anlaysis.

The City admits that Stephens is a member of a protected class, for purposes of this motion for summary judgment.[23] The City makes no statement admitting or denying that Stephens lacked qualification, in contravention of the second prima facie element. Instead, the City only argues the third and fourth elements of the prima facie case and states that "Plaintiff cannot meet these two burdens."[24] Because there is no evidence that Stephens lacked qualification, the second element is not problematic to her prima facie case. However, Stephens' prima facie case fails on the third element, which requires an "adverse employment action."

As the Supreme Court has noted, Title VII does not set forth a general civility code for the American workplace. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)). Judicial standards for sexual harassment must filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).

Although this Court does not condone the alleged actions of Interim Chief Jessie Walker, his conduct is not actionable under Title VII jurisprudence. Stephens worked for the Bastrop Police Department, and with Jessie Walker, for nine-and-one-half years. In that time, Stephens alleges a total of three offensive confrontations with Walker. Only one was included in a complaint filed with the EEOC and Stephens admits that, after filing that grievance, she

---

[23] [Doc. #14-9, p. 15].

[24] *Id.*

experienced no affirmative offenses by Walker, only his "silence and shunning." Considering the totality of circumstances, the Court finds the alleged remarks toward women in general to be distasteful; however, those statements seem to fall squarely within the Supreme Court's unactionable category of "sporadic use of abusive language," which is not actionable.

Fifth Circuit precedent recognizes that only "ultimate employment decisions" are legally actionable "adverse employment actions" in Title VII discrimination claims. *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2006). Without proving such an action, a plaintiff cannot make the necessary prima facie case of discrimination. *Id.* at 557. The Fifth Circuit has held that poor performance evaluations, unjust criticism, and being placed on probation do not constitute "ultimate employment decisions," in the discrimination context. *King v. Louisiana*, 294 F. App'x. 77, 84, 2008 WL 4326493, *5 (5th Cir. 2008) (citations omitted). Similarly, allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation. *Id.* at 85, *6.

Although Stephens clearly finds her treatment by Interim Chief Walker and Captain Sherman Burrell to be, at the very least, unpleasant and unfair, the facts as alleged simply are not actionable. Stephens complains of several instances of harassment, both general and specific, by Captain Sherman Burrell. The complained-of accusation, regarding Stephens' alleged violation of sick leave policy, was upheld based on Anthony Evans' positive identification of Stephens at the mall on the day in question. When presented with the facts and given an opportunity for rebuttal, Stephens simply could not confirm or deny whether she was in violation of the policy. In spite of the fact that Stephens could not disprove the allegations, her initial pay suspension

was reinstated, so that her only damage was a one-day suspension. We acknowledge Stephens' claim that this suspension potentially docks one day from time considered in future promotion decisions. However, Stephens can point to no facts showing that she was denied a promotion; instead, she was granted her requested lateral transfer to detective. Thus, there is no plausible injury or harm.

Another instance involved Capt. Burrell demanding that Stephens remain on duty at a hurricane shelter, requiring her to work on a sprained ankle. This may very well have been an unfair and improper work request but does not rise to the level of actionable discrimination. Similarly, any decision(s) by Capt. Burrell to prevent Stephens from attending court until the exact time she was required to testify appears to be, at best, inconvenient and slightly undesirable. However, there have been no allegations that Capt. Burrell's conduct ever caused Stephens to be in violation of a court-mandated appearance or subpoena.

Stephens also alleges that she was denied overtime in retaliation for filing her first grievance. However, she has failed to allege sufficient facts to support this claim in the face of evidence to the contrary. Sgt. Anthony Evans was identified as the dispatch sergeant responsible for assigning overtime to officers at the Bastrop Police Department from August 2008 to August 2009. In his affidavit, Sgt. Anthony Evans offered Stephens' two work-related injuries,[25] between August 2008 and January 2009, as the reason for her reduced overtime. Sgt. Evans explained that Stephens' injuries prevented her from being able to perform her duties efficiently. This testimony, and legitimate non-discriminatory reason for reducing Stephens' overtime, aligns

---

[25] The first injury is identified as an ankle injury, which was re-aggravated while on duty. The second injury related to her eye and was sustained on duty, causing lasting effects through December 2008. [Doc. #14-4, Affidavit of Sgt. Anthony Evans].

with the large amount of sick leave visible in Stephens' Payroll History[26] for the corresponding pay periods.

Despite the fact that the above-mentioned facts fail to rise to the level of an actionable "adverse employment action," Stephens appears to be alleging that she was constructively discharged from her job as a result of the discrimination and/or harassment. However, for the reasons set forth more fully below, Stephens has failed to allege sufficient facts to prove she was constructively discharged.

**Constructive Discharge**

A constructive discharge occurs when an employee has quit her job under circumstances that are treated as an involuntary termination of employment. *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). The Fifth Circuit has explained:

> The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.

*Id.* (quoting *Jurgens v. EEOC*, 903 F.2d 386, 390 (5th Cir. 1990)). Whether an employee would feel forced to resign is case- and fact-specific, but the Fifth Circuit considers the following factors relevant, singly or in combination:

> (1) Demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable

---

[26] [Doc. #14-3].

than the employee's former status].

*Id.* (citations omitted).

The test that Stephens must meet is an objective, "reasonable employee" test: whether a reasonable person in Stephens' shoes would have felt compelled to resign. *Id.* Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). The resigning employee bears the burden to prove constructive discharge. *Jurgens*, 903 F.2d at 390-91.

Each situation is unique and it is sometimes the combination of offensive facts and circumstances that creates an unbearable situation. However, using the Fifth Circuit's factors as a guidepost, even the combination of offenses complained of by Stephens will not rise to the level of a constructive discharge. From the outset, the Court notes that Stephens suffered no demotion, no reassignment to degrading work nor to work under a less qualified supervisor, and no reduction in salary. On the contrary, Stephens' income increased in each successive year: 2007, 2008, and 2009. Her only argument for a reduction in job responsibilities is her complaint of a reduction in overtime, which has already been addressed and dismissed. Stephens was also never offered any form of early retirement; instead, she was granted, upon her own request, a lateral transfer to the position of detective in November 2009. The only factor which Stephens attempts to allege is constructive discharge by badgering, harassment, or humiliation. However, even accepting the facts as alleged and viewing them in the light most favorable to Stephens, there is no evidence to show that any harassment was calculated to encourage Stephens' resignation. The evidence clearly shows that Stephens maintained her position until November 2009, when she was granted the transfer that she requested. Thus, Stephens has failed to prove she suffered an "adverse employment action" in the

form of a constructive discharge or otherwise.

**Retaliation**

Stephens does not contend that she has received a "right to sue" letter on her second EEOC complaint, filed on October 21, 2008, claiming retaliation for her initial grievance. However, this Court's jurisdiction is not contingent on the filing of a charge-specific EEOC complaint, and resulting "right to sue" letter. Instead, the scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Thomas v. Texas Dept. of Criminal Justice,* 220 F.3d 389, 395 (5th Cir. 2000) (citations omitted). It is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court. *Gupta v. East Texas State University,* 654 F.2d 411, 413-14 (5th Cir. 1981).

To establish a retaliation claim, the plaintiff must establish: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. *Mattern v. Eastman Kodak*, 104 F.3d 702, 705 (5th Cir. 1997). The ultimate question in an unlawful retaliation case is whether the defendant discriminated against that plaintiff because she engaged in conduct protected by Title VII. *Long v. Eastfield College*, 88 F.3d 300, 304 n. 4 (5th Cir. 1996). Stephens engaged in activity protected by Title VII, by filing an EEOC complaint for discrimination. However, even reviewing the evidence in the light most favorable to Stephens, the facts do not support a finding that Stephens suffered an "adverse employment action."

In *Burlington Northern & Santa Fe Railway Co. v. White,* the Supreme Court established the

standard for "adverse employment action" in the specific context of a Title VII retaliation claim. 548 U.S. 53 (2006). Title VII's antiretaliation provision forbids employer actions that "discriminate against" an employee (or job applicant) because she has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." *Id.* at 59 (citing 42 U.S.C.A. §2000e-3(a)). In distinguishing the language of Title VII's antidiscrimination provision from that of its antiretaliation provision, the Supreme Court found that the latter extends beyond workplace-related or employment-related retaliatory acts and harm. *Id.* at 67. Thus, contrary to the standard set forth above for Title VII discrimination claims, actionable retaliation is not limited to "ultimate employment decisions." *Id.* (citations omitted).

The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. *Id.* A plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Id.* at 68 (citations and internal quotation marks omitted). Petty slights, minor annoyances, and simple lack of good manners will not typically rise to the level of actionable retaliatory conduct under an objective standard. *Id.* However, context matters and the significance of any given act of retaliation will often depend upon the particular circumstances. *Id.* at 69.

Stephens alleges that she was subjected to multiple instances of retaliatory conduct, as a result of her decision to file written grievances against Interim Chief Walker. Specifically, Stephens contends that the dispute, which ultimately culminated in a one-day suspension without pay, over whether or not she violated sick leave policy was in retaliation for the filing of her first grievance. The grievance was filed on August 12, 2008, with the alleged sick leave violation occurring on

October 5th and the resulting disciplinary hearing in December. Through an informal process, Stephens appealed her suspension, which led to her pay being reinstated but her suspended status maintained. Each day of suspension subtracts one day from an employee's accumulated seniority time, considered in future promotion decisions. Consequently, Stephens filed her second EEOC complaint on October 21, 2008; however, this time for retaliation.[27]

Stephens further alleges that Captain Sherman Burrell retaliated against Stephens for filing her grievances by following her on patrol, accusing her of not doing her job correctly, and interfering with summonses to appear in court. Stephens even complains that Capt. Burrell would publicly announce when she would take bathroom breaks. According to Stephens' timeline, this harassment did not begin until immediately after her first grievance was filed in August 2008 and was not directed toward any other employees. Stephens believes that Capt. Burrell also purposely forced her to work on an injured, sprained ankle out of sheer retaliation. In that instance, Stephens followed Burrell's orders, under threat of suspension, and remained at the hurricane shelter on her sprained ankle. She alleges that the totality of circumstances shows that she was subjected to retaliation sufficient to dissuade a reasonable employee from reporting discriminatory conduct similar to that of which Stephens has complained.

Capt. Burrell's actions, although unfavorable and undesirable to Stephens, did not cause her injury or harm, as required to be actionable retaliation. The instances alleged, whereby Capt. Burrell followed Stephens on patrol or prevented her from reporting to court until needed for testimony, fit squarely within the category of "minor annoyances," which are typically not

---

[27] As mentioned above, the second EEOC complaint has not been filed into the record and the exact timeline of events is not clearly set forth.

15

actionable. Furthermore, the retaliatory conduct must be materially adverse, such that it might well have dissuaded a reasonable employee from pursuing the remedial mechanisms available under Title VII. Here, Stephens was able to, and in fact did, file a second EEOC grievance for retaliation, and she also remained in her position until she was granted her requested lateral transfer to become a detective.

**Hostile Work Environment**

As discussed above, Stephens has not alleged sufficient facts to prove she suffered an actionable adverse employment action. A hostile work environment claim arises in cases where harassment occurred, but no tangible adverse employment action was taken. *Reine v. Honeywell Intern, Inc.,* 362 F. App'x. 395, 397 (5th Cir. 2010) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998)). Where the claim of harassment is against a supervisor, there are four elements of a hostile working environment claim: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a "term, condition, or privilege" of employment. *Lauderdale v. Texas Department of Criminal Justice, Institutional Div.*, 512 F.3d 157, 162-63 (5th Cir. 2007). Even if Stephens can prove the first three elements of this cause of action, her claim must fail for lack of sufficient facts to support the fourth element.

To affect a term, condition, or privilege of employment, "sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). To determine whether conduct is severe or pervasive, we will look to the totality of the circumstances. *Lauderdale,* 512 F.3d at 163. Relevant factors include "the frequency of the

16

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Finally, the conduct must be both "objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).

In support of her claim alleging a hostile work environment, Stephens first alleges that Interim Chief Walker subjected her to a verbal "tirade" lasting two to three minutes, just prior to a disciplinary hearing on a work-related incident involving Stephens. Although Stephens believes Walker's tirade was directly related to her gender, it was clearly established in Stephens' letter to Mayor Hawkins that Walker "very quickly turned" his attention from Stephens to Sgt. Anthony Evans, a male officer.[28] Furthermore, Stephens claims that she was embarrassed, mortified, and also began to feel threatened by Walker. However, Stephens also concedes that Sgt. Evans spoke up in her defense three times during Walker's outburst. In light of the facts, presented by Stephens in both her deposition and in her letter to Mayor Hawkins, Walker's two to three minute "tirade" was not objectively severe or pervasive even if Stephens found them to be subjectively offensive.

Stephens further alleges several instances where Interim Chief Walker used highly offensive language in reference to various females, both within and outside of the police force. Stephens does not allege that she was ever on the receiving end of any of the alleged

---

[28] Doc. # 14-8, page 2.

inappropriate remarks towards the female race.[29] Stephens contends that she was improperly required to resign from her job as dispatcher, in order to reapply for a job as patrol officer.[30] However, Stephens fails to show how she suffered any consequences as a result of this process. Instead, she concedes that she remained a patrol officer until November 2009, when Stephens requested and was granted a lateral transfer to become a detective. Finally, Stephens claims that Interim Chief Walker avoided placing two females on the same shift, until it became absolutely necessary. As a result, the shift was termed the "gender shift," and allegedly had to first be accepted by male officers before such a shift was instituted.

The Court has reviewed Stephens' allegations against both Walker and Burrell,[31] in the context of a hostile work environment claim, and finds that Stephens has failed to show that the complained-of activity affected a term, condition, or privilege of her employment.[32] Stephens

---

[29] As previously recognized, Supreme Court precedent has made it clear that judicial standards for sexual harassment must filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

[30] Although Stephens argues this in favor of her Title VII claims, she admitted in her deposition that this fact "really doesn't have anything to do with [her] lawsuits." [Doc. #14-1, page 13, lines 9-10]. Stephens even explained that there is no promotional status from dispatcher to patrol and that dispatchers must "resign and start in patrol if you want to do that." [Doc. #14-1, page 10, lines 1-5]. She further concedes that "[i]n the time that [Stephens] was there, [Stephens] was the only one that went from dispatch to patrol," indicating that there is no basis for her complaint that the resignation was improper. [Doc. #14-1, page 12, lines 2-3].

[31] In her Memorandum in Opposition to Defendant's Motion for Summary Judgment [Doc. #16], Stephens does not allege Burrell's actions in connection to her claim for a hostile working environment. However, even considering those facts in addition to the facts alleged against Interim Chief Walker, Stephens has failed to state a claim for hostile working environment.

[32] The Court will not consider evidence, such as the statements made by Della Wallace, obtained in violation of the hearsay rules contained in FRE Rule 802 et seq.

claims that Walker has personally approached her in offensive ways, such as the complained-of "tirade," on two other occasions during her entire tenure with the Bastrop Police Department.[33] According to Fifth Circuit precedent, conduct such as that of which Stephens complains is not severe, physically threatening, or humiliating; at most, it is unwanted and offensive. *See Stewart v. Mississippi Transportation Commission*, 586 F.3d 321, 330 (5th Cir. 2009) (no hostile work environment found where a female employee was allegedly subject to one subjectively offensive utterance by her supervisor every few days); *see also Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 Fed. Appx. 874, 2010 WL 5186773 (5th Cir. 2010) (no hostile work environment found where female employee's supervisor allegedly stated that her department would be better off without females; where a male was hired to replace her; where a male colleague verbally attacked her twice and acted violent toward other females; and where her supervisor gave her "physically demanding workloads" and threatened to fire her).

The conduct of which Stephens complains is not the kind that would interfere unreasonably with a reasonable person's work performance or destroy her opportunity to succeed in the workplace. *Stewart*, 586 F.3d at 330-31 (citing *Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir.1999) (sexual teasing and some touching over a period of two years was "not severe" because it was "not the type of extreme conduct that would prevent [the plaintiff] from succeeding in the workplace.")). Objectively, a reasonable person would not find Walker's actions to be offensive enough to constitute a hostile work

---

[33] As of Stephens' August 11, 2008 letter to Mayor Hawkins, her tenure with the Bastrop Police Department had been nine-and-one-half years. Thus, Stephens was personally confronted by Jessie Walker, in a subjectively offensive manner, on three occasions in nine-and-one-half years.

19

environment. Thus, the harassment Stephens alleges is insufficient to support her claim.

## CONCLUSION

For the reasons assigned herein, Defendant's motion for summary judgment is **GRANTED**. Plaintiff's claims are **DENIED WITH PREJUDICE**. It is **SO ORDERED**, in Shreveport, Louisiana, this 1st day of November, 2011.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE